**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **JOHN MICHAEL WEATHERFORD** | ) | |
| | ) | **Case No. 3:26-cv-00060** |
| **v.** | ) | |
| | ) | |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff John Michael Weatherford filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him disability insurance benefits ("DIB") under Title II of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 12) and supporting memorandum (Docket No. 12-1), to which Defendant SSA responded (Docket No. 15) and Plaintiff replied (Docket No. 16). The parties have consented to entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit. (Docket No. 6).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket No. 12) is **DENIED**.

## I. INTRODUCTION

On October 18, 2021, Plaintiff filed an application for DIB. (Transcript of the Administrative Record (Docket No. 10) at 17).[1] In his application, Plaintiff asserted that, as of the

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

alleged onset date of August 20, 2020, he was disabled and unable to work due to the following physical or mental conditions: schizophrenia and depression. (AR 339).

His claim was denied initially on January 11, 2023, and upon reconsideration on March 13, 2024. (AR 64–87). Administrative Law Judge ("ALJ") Lori S. Grayson held an in-person hearing on October 1, 2024 and a telephonic hearing on March 6, 2025. (AR 32–463). Plaintiff attended the first hearing, but did not attend the second. On March 14, 2025, the ALJ denied Plaintiff's claim. (AR 23–54). On November 21, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1–6). Plaintiff then timely commenced this civil action pursuant to 42 U.S.C. § 405(g). (Docket No. 1).

## II. THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in the March 14, 2025 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.

2. The claimant has not engaged in substantial gainful activity since August 20, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: schizoaffective disorder depressive type, schizophrenia, and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in section 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can concentrate persist and maintain pace in order to perform simple routine repetitive tasks. He can occasionally interact with supervisors, coworkers, and the general public. The claimant can adapt to routine changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 13, 1986 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2020, through the date of this decision (20 CFR 404.1520(g)).

(AR 19–26).

## III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Social Security Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that

would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).

A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984).

**B. Plaintiff's Assertions of Error**

In his motion and supporting briefing, Plaintiff asks the Court to remand the matter back to the SSA for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). (Docket No. 13-2 at 22). This request is based on three assertions of error: (1, 2) the ALJ improperly evaluated the medical opinion of psychological consultative examiners Jerry Campbell, Pys.D. and Alice K. Garland, M.S., L.S.P.E. and the medical opinion of state agency consultant Carlos Jusino-Berrios, M.D.; and (3) the ALJ improperly evaluated Plaintiff's allegations concerning his mental functioning. (AR 5–15).

**1. The Medical Opinions of Dr. Campbell, Ms. Garland, and Dr. Jusino-Berrios**

Plaintiff's first and second assertions of error concern the evaluation of his RFC. The ALJ determined that Plaintiff's RFC does not include any physical exertional limitations, but does contain certain nonexertional limitations. (AR 21). The ALJ found that Plaintiff can "concentrate persist and maintain pace in order to perform simple routine repetitive tasks"; "occasionally interact with supervisors, coworkers, and the general public"; and "adapt to routine changes in the workplace." (AR 21).

Courts review an ALJ's RFC determination for substantial evidence. *See Blakley*, 581 F.3d at 405–06. Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402

U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). An ALJ "need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

When evaluating medical opinion evidence to formulate the RFC, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include: (1) supportability, (2) consistency, (3) the provider's relationship with the claimant, (4) the provider's specialization, and (5) other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a "persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two factors have been described as follows:

> In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. . . . Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio September 12, 2023) (citations omitted).

These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. 20 C.F.R. § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

As set forth above, Plaintiff asserts that the ALJ improperly evaluated the opinion of psychological consultative examiner Jerry Campbell, Pys.D and Alice K. Garland, M.S., L.S.P.E. as well as the opinion of state agency consultant Carlos Jusino-Berrios, M.D.

i. *Dr. Campbell and Ms. Garland's Opinion*

On November 18, 2022, Plaintiff underwent a psychological examination with Dr. Campbell and Ms. Garland. (AR 548–51). In addition to performing a clinical interview and mental status examination, Dr. Campbell and Ms. Garland also reviewed medical records from Vanderbilt Behavioral Health. Based on their assessment, they summarized Plaintiff's condition as follows:

> The client has several diagnoses including schizophrenia, schizoaffective disorder, and major depressive disorder. The most recent diagnosis appears to be schizoaffective disorder. It appears that the client does well when not stressed but may overcompensate in a stressful environment.

They also opined on Plaintiff's functioning with respect to "paragraph B" criteria.[2] They found that Plaintiff had a "mild" ability to perform complex and detailed tasks; a "mild to marked depending on level of stress" ability to persist and concentrate; a "moderate" ability to work with the public; and a "moderate" ability to adapt. They wrote that Plaintiff's adaptive behavior may deteriorate if he is under extreme stress.

The ALJ found Dr. Campbell and Ms. Garland's opinion to be "persuasive." (AR 23–24). She described the opinion as well-supported because the two medical professionals "noted that the claimant has friends, his eye contact was fair, there was no indication of a thought disorder, but the claimant got overwhelmed and lost concentration." The ALJ also described the opinion as being consistent with the record. Specifically, she pointed to the findings of the state agency psychological examiner who opined that Plaintiff had no more than a "moderate" limitation with respect to "paragraph B" criteria. She also pointed to medical evidence, which indicated normal

[2] The limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The "paragraph B" criteria "represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

recent mental status exams, a failure to take medication as prescribed, symptom improvement with medication, and discharge from care for failure to appear for appointments.

In his motion and supporting briefing, Plaintiff argues that the RFC is not in line with Dr. Campbell and Ms. Garland's opinion concerning Plaintiff's ability to persist and concentrate, his ability to adapt, and his reaction to stress. (Docket No. 12-1 at 6–10). *First*, Dr. Campbell and Ms. Garland opined that Plaintiff's ability to persist and concentrate was "mild to marked depending on level of stress." However, the RFC states that Plaintiff could "concentrate persist and maintain pace in order to perform simple routine repetitive tasks." Plaintiff argues that the RFC is in error because "while a limitation for simple, routine, repetitive tasks may arguably convey moderate limitations in concentration, persistence, and pace, . . . such a limitation does not convey marked limitations." (*Id.* at 6 (citing *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016))). *Second*, although Dr. Campbell and Ms. Garland opined that Plaintiff's ability to adapt was "moderate," the RFC states that Plaintiff could "adapt to routine changes in the workplace." Plaintiff argues the RFC should provide a limitation to occasional change. (*Id.* at 7). *Third and finally*, although Dr. Campbell and Ms. Garland opined that Plaintiff may overcompensate in a stressful environment, Plaintiff complains that the RFC does not limit him to a low stress environment.

For all three of these criteria, Plaintiff argues that the ALJ failed to explain why she did not incorporate Dr. Campbell and Ms. Garland's limitations into the RFC. (*Id.*). Plaintiff relies on the Sixth Circuit's opinion in *Kinney v. Comm'r of Soc. Sec.* to support his position that the ALJ erred by failing to explain why "crucial limitations" from Dr. Campbell and Ms. Garland's opinion were not incorporated. No. 23-3889, 2024 WL 2273365 (6th Cir. May 20, 2024). In *Kinney*, the Sixth Circuit found that an ALJ's failure to either incorporate the RFC limitations that the ALJ

found persuasive or to explain why those limitations were omitted from the RFC was "in error." *Id.* at *3. The *Kinney* court explained:

> An ALJ need not incorporate every limitation from a medical source's recommendation, even if it finds that medical source to be persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). However, under Social Security Ruling 96-8p, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Here, the ALJ recited the limitations recommended by Dutt, including that Kinney required a flexible break schedule, and noted that he found those limitations to be "consistent with and supported by the record as a whole" and "persuasive." . . . However, the ALJ—without explanation—then omitted that limitation from his RFC and his hypothetical to the VE. Without any limitation related to flexible break scheduling, the RFC conflicted with Dutt's medical opinion concluding such flexibility would be necessary, and the ALJ was obligated to explain the omission. *See Dunlap v. Comm'r of Soc. Sec.*, No. 20-4179, 2021 WL 5371401, at *7 (6th Cir. Sept. 20, 2021) (order). The failure to either incorporate the limitation or explain its omission was an error.

*Id.*

In response, the SSA argues that the ALJ's evaluation of Dr. Campbell and Ms. Garland's opinion was proper. (Docket No. 15 at 7–8). With respect to Plaintiff's ability to persist and concentrate, the SSA asserts that the ALJ's decision "as a whole" makes it clear that the ALJ found that Plaintiff had no more than moderate limitations. The SSA points to the opinion of state agency psychological consultant Carlos Jusino-Berrios, M.D., which found that Plaintiff had moderate limitations in his ability to persist and concentrate. As for Plaintiff's ability to adapt and manage stress, the SSA argues that the ALJ provided a limitation to "simple, routine, repetitive tasks with only occasional interaction with others," which "inherently describe a less stressful work environment."

The Court finds that substantial evidence supports the ALJ's analysis of Dr. Campbell and Ms. Garland's opinion and formulation of the RFC with respect to that opinion. As an initial matter, Plaintiff does not argue that the ALJ failed to properly discuss the persuasiveness of the

opinion. Nevertheless, the Court finds that the ALJ's discussion of the supportability and consistency of the opinion was appropriate. Further, in the decision, the ALJ explained that "no greater restrictions were warranted" in the RFC because of "generally normal recent mental status exams and statements that he is doing better, failure to take medication as prescribed, improvement with medication, and his discharge from care for failure to appear for appointments." (AR 23). In other words, although the ALJ found Dr. Campbell and Ms. Garland's opinion to be persuasive – specifically that Plaintiff had a "mild to marked depending on level of stress" ability to persist and concentrate, had a "moderate" ability to adapt, and may overcompensate in a stressful environment – the ALJ offered an explanation for why she did not incorporate those specific limitations into the RFC. In other words, the ALJ explained the omission as required under *Kinney*.

Instead, the ALJ incorporated certain limitations set forth by state agency psychological consultant Carlos Jusino-Berrios, M.D. When the ALJ is "presented with the not uncommon situation of conflicting medical evidence[,] [t]he trier of fact has the duty to resolve that conflict." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The Court's job is "only to ensure that the Commissioner's determination is supported by substantial evidence." *Id.* (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). The ALJ articulated – albeit not as robustly as Plaintiff may have liked – why she felt that limitations more like those opined by Dr. Jusino-Barrios were more appropriate than limitations opined by Dr. Campbell and Ms. Garland.

Therefore, the Court finds that the ALJ sufficiently articulated the RFC finding, at least with respect to the evaluation of Dr. Campbell and Ms. Garland's opinion. Given that the ALJ's RFC determination is properly within the permitted "zone of choice within which the decisionmakers can go either way, without interference by the courts," *Blakley*, 581 F.3d at 406,

the Court concludes that the RFC is supported by substantial evidence with respect to Dr. Campbell and Ms. Garland's opinion.

ii. *Dr. Jusino-Barrios's Opinion*

On January 4, 2023, state agency consultant Dr. Jusino-Barrios provided an assessment of Plaintiff's medically determinable impairments and mental RFC. (AR 69–80). This assessment was based on a review of medical records and Plaintiff's functional report. Dr. Jusino-Barrios opined that Plaintiff was limited in his ability to concentrate and persist, interact socially, and adapt. Specifically, Plaintiff was moderately limited in his ability to: (i) carry out detailed instruction; (ii) maintain attention and concentration for extended periods; (iii) complete a normal workday without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (iv) interact appropriately with the general public; (v) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (vi) respond appropriately to changes in the work setting; and (vii) set realistic goals or make plans independently of others. Dr. Jusino-Barrios further opined that the totality of the medical evidence supported that Plaintiff "is able to understand, remember and execute simple one or two steps instructions, able to maintain attention, sustain concentration persistence and pace, adapt to changes and perform better in settings with limited interaction with others."

The ALJ found Dr. Jusino-Barrios's opinion to be "persuasive." (AR 24). The ALJ described the opinion as well-supported because Dr. Jusino-Barrios "notes diagnoses of schizophrenia and depression, but also the absence of delusions, auditory hallucinations, psychosis, and homicidal or suicidal ideations. There was evidence that the claimant sometimes gets overwhelmed, but his thought process was organized." The ALJ also described the opinion as

being consistent with record. To support this consistency finding, the ALJ pointed to medical evidence indicating normal recent mental status exams, a failure to take medication as prescribed, symptom improvement with medication, and discharge from care for failure to appear for appointments.

In his motion and supporting briefing, Plaintiff argues that the RFC is not in line with Dr. Jusino-Barrios's opinion concerning Plaintiff's limitation to "simple one or two step tasks" and a moderate limitation in his ability to "respond to basic work setting changes." (Docket No. 12-1 at 10–12). For the former limitation, Plaintiff argues that the RFC should include a limitation to "simple one or two step tasks" because such a limitation is included in Dr. Jusino-Barrios's opinion. For the latter limitation, Plaintiff argues that RFC should not indicate that Plaintiff has the ability to adapt to routine changes in the workplace because a more restrictive limitation is included in Dr. Jusino-Barrios's opinion. Just as with Dr. Campbell and Ms. Garland's opinion, Plaintiff argues that the ALJ failed to sufficiently explain why she did not incorporate Dr. Jusino-Barrios's limitations into the RFC.

The Court finds that substantial evidence supports the ALJ's analysis of Dr. Jusino-Barrios's opinion and formulation of the RFC with respect to that opinion. As set forth above, in his decision, the ALJ explained that "no greater restrictions were warranted" in the RFC because of "generally normal recent mental status exams and statements that he is doing better, failure to take medication as prescribed, improvement with medication, and his discharge from care for failure to appear for appointments." (AR 23). In other words, although the ALJ found Dr. Jusino-Barrios's opinion to be persuasive, the ALJ offered an explanation for why she did not incorporate those specific limitations into the RFC. Namely, she found that other medical record evidence indicated that Plaintiff was not as restricted in these areas of functioning. Once again, this

articulation may not be as lengthy as Plaintiff would like, but it nevertheless provides a "coherent explanation" of the ALJ's reasoning, *Lester*, 2020 WL 8093313, at *14, as well as a "minimum level of articulation" to "provide sufficient rationale" for this Court, *Warren I*, 2021 WL 860506, at *8.

Therefore, the Court finds that the ALJ sufficiently articulated the RFC finding, at least with respect to the evaluation of Dr. Jusino-Barrios's opinion. Given that the ALJ's RFC determination is properly within the permitted "zone of choice within which the decisionmakers can go either way, without interference by the courts," *Blakley*, 581 F.3d at 406, the Court concludes that the RFC is supported by substantial evidence with respect to Dr. Jusino-Barrios's opinion. For these reasons, the Court rejects Plaintiff's first and second assertions of error.

**2. <u>Plaintiff's Allegations Concerning His Mental Functioning</u>**

In the decision, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record. (AR 22). Specifically, the ALJ found that Plaintiff's statements were inconsistent with his "activities of daily living, generally normal recent mental status exams and statements that he is doing better, failure to take medication as prescribed, improvement with medication, and his discharge from care for failure to appear for appointments."

To support this finding, the ALJ cited to medical records from Vanderbilt University Medical Center (AR 457–546, 553–748) and the consultative examination of Dr. Campbell and Ms. Garland (AR 547–51). In the decision, the ALJ discussed these medical records in detail and concluded that they indicated that Plaintiff had "normal recent mental status exams," stated that he was improving, failed to take medicine as prescribed, and was discharged from care for a failure to appear for appointments.

In his motion and supporting briefing, Plaintiff argues that the ALJ failed to provide adequate reasons for rejecting his allegations concerning his mental functioning. (Docket No. 12-1 at 16–19.) To support his position, Plaintiff points to medical record evidence that he believes support his allegations concerning his symptoms. These include records indicating "ongoing abnormal mental status examination findings," a lack of sustained improvement, negative impacts on his daily activities, and persistent symptoms even when taking medication as prescribed. Plaintiff argues that the ALJ failed to consider the reasons that Plaintiff may not have complied with a prescription regimen.

"An individual's statements as to pain or other symptoms will not alone establish that [she is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted). Rather, when an individual alleges impairment-related symptoms,[3] the ALJ must evaluate those symptoms using a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ must determine whether the claimant has a medically determinable impairment that could be reasonably expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(c)(1). Second, where such a medically determinable impairment is present, the ALJ must evaluate the persistence, intensity, and limiting effects of the alleged symptoms. *Id.* at § 404.1529(c)(2)–(3). As to the second inquiry, the ALJ must consider two types of evidence: (1) the objective medical evidence of record, and (2) other evidence. *Id.*

That "other evidence" includes: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-

[3] A "symptom" is defined as an individual's own description or statement of her impairment. SSR 16-3p, 2017 WL 5180304, at *2.

medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at § 404.1529(c)(3)(i)–(vii); 2017 WL 5180304, at *7–8. An ALJ need not consider all seven buckets of "other evidence" in every case but is required to "discuss the factors pertinent to the evidence of record." 2017 WL 5180304, at *8

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important.[4] If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if those statements are *inconsistent*, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

---

[4] The precursor to SSR 16-3p, SSR 96-7p, required the ALJ to make a "credibility" determination based on the claimant's statements regarding the limiting effects of his alleged symptoms. 1996 WL 374186 at *3 (July 2, 1996). Although the Commissioner removed any reference to "credibility" in SSR 16-3p, there is no substantive change in the ALJ's analysis, and the case law pertaining to credibility evaluations under SSR 96-7p remains applicable. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *see also Young v. Berryhill*, No. 3:17-cv-395, 2018 WL 1914732, at *6 (W.D. Ky. April 23, 2018) ("The analysis under SSR 16-3p otherwise is identical to that performed under SSRI 96-7p."). As noted by a sister district court, reviewing courts have therefore largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

The Court finds that the ALJ's determination of the consistency of Plaintiff's allegations concerning mental functioning is supported by substantial evidence. *See Walters*, 127 F.3d at 531 ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence.") (citation omitted). As set forth above, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with his "activities of daily living, generally normal recent mental status exams and statements that he is doing better, failure to take medication as prescribed, improvement with medication, and his discharge from care for failure to appear for appointments." The ALJ supported this conclusion with a thorough review of the medical record evidence, Plaintiff's function report, testimony from Plaintiff's first hearing,[5] Plaintiff's daily activities, and the medical opinion evidence.

In addition, merely pointing to contrary evidence in the record is insufficient to show that the ALJ's decision lacks substantial evidence. While such evidence could weigh in favor of a

---

[5] Plaintiff did not appear at his second hearing, so the ALJ was not able to discuss that testimony.

finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were consistent with the medical evidence, it does not demonstrate that the ALJ's determination was not supported by substantial evidence. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, [Plaintiff] must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence.").

In sum, the ALJ relied on specific evidence to support the conclusion that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record. Given such support, as well as the significant deference that must be afforded the ALJ's credibility determination, *see Hernandez*, 644 F. App'x at 476, the Court finds no reversible error in the ALJ's finding. For these reasons, the Court rejects Plaintiff's third assertion of error.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (Docket No. 12) is **DENIED** and the decision of the Social Security Administration is **AFFIRMED**.

An appropriate Order will accompany this memorandum opinion.

It is SO ORDERED.

Lynda M. Hill
LYNDA M. HILL
United States Magistrate Judge